Clare J. Hoyt, J.
Proceeding under article 78 of the CPLR; petitioner seeks an order in the nature of mandamus to compel the respondent Clerk, Treasurer, Mayor, Attorney and Trustees of the Village of Cornwall to produce for inspection the notes, records and papers in the custody of the respondents relating to expenditures of funds by the village in connection with the proposed Cornwall hydroelectric plant. Petitioner further sebks inspection of all notes, records and papers in respondents’ custody or control relating to reimbursements by Consolidated Edison to the village of any expenditures made by the village in connection therewith.
It is alleged that petitioner publishes the Times Herald Record from its offices in the City of Middletown and that the paper has general circulation throughout the county. Petitioner further alleges that in 1963 Consolidated Edison sought to procure the necessary license and permit for the construction of the plant, that it agreed with the village to replace its water supply in return for Consolidated Edison taking portions of the village’s existing water supply system in connection with the project, that petitioner ascertained that certain sums were billed by respondent Village Attorney to the village for fees and expenses in connection with the project, that said sums had been reim *43 bursed by Consolidated Edison to the village and that respondent Village Attorney had billed Consolidated Edison directly for certain other services and disbursements which had been paid directly to him by Consolidated Edison.
It is further alleged by petitioner that both the relationship between the village and Consolidated Edison and the reasons for the expenditures and reimbursements of the funds are matters of public concern and interest.
Petitioner further claims that respondents have refused to permit its representatives to examine the public records and supporting documents relating to the project and the sums disbursed in connection therewith. It claims that upon the submission of a written request respondents continued to refuse petitioner’s access to the records, but arranged for an analysis of the records, books and papers to be made by respondents which analysis would be available to petitioner. Petitioner claims it is entitled to an inspection of the original papers and records on file, not merely to an analysis thereof prepared by respondents.
On the return of the order to show cause respondents appeared and moved to dismiss the petition in point of law. This dismissal was sought on three grounds: (1) the petitioner is not a domestic corporation and lacks capacity to sue; (2) the petition was not properly verified; and (3) the petitioner does not have “ proper standing to maintain this proceeding ”.
The first two objections are technical in nature and can be quickly disposed of. The petitioner is designated as “ Orange County Publications Division of Ottaway Newspapers-Radio, Inc.” and it is alleged that this is a division of a domestic corporation having its principal place of business within the County of Orange. It is clear to the court and must be to the respondents that the petition is brought by a domestic corporation, empowered to sue, which sues on behalf of its division which claims to have been wronged and seeks redress. Respondents cannot be misled by the designation and any judgment rendered herein will be conclusive on the corporate petitioner, Ottaway Newspapers-Radio, Inc. The inclusion in the designation or name of petitioner of ‘ ‘ Orange County Publications Division ’ ’ is merely descriptive of the branch or designation of the corporate activity involved in this litigation. It can be treated as surplusage and is not prejudicial to respondents in this proceeding. At most it is an irregularity that the court may permit and does permit to be disregarded (CPLR 2001).
The second objection, the alleged improper verification of the petition, is likewise without merit. The petition was verified *44 by the editor of the Times Herald Record, admittedly an employee and not an officer or director of the corporate petitioner. Respondents who were served with the petition and the order to show cause issued thereon on September 26, 1967 first raised this question when they moved to dismiss the petition on the return of the order to show cause on October 2, 1967. On October 4, 1967 petitioner served upon respondents’ attorney a copy of the original petition with a verification executed by the secretary and vice-president of the corporate petitioner. The respondents on receipt of the petition and the purported verification could have treated the petition as a nullity, provided notice with due diligence of election to so do had been given petitioner (CPLR 3022). First raising the question on the return date of the petition is not such diligence. The court thus may and does permit the original petition to be amended by the verification subsequently served. In Matter of Smith v. Board of Stds. & Appeals (2 A D 2d 67) an order of Special Term dismissing a petition for improper verification was reversed upon a showing that no prejudice resulted, that the irregularity was one of procedure and that the respondents did • not diligently notify the petitioner of the-claimed default. The court stated (p. 70): “ but it could scarcely be doubted that if a proceeding were commenced by a petition defective in respect of verification, or lacking verification, that the court would not feel required to correct the mistake; or supply the omission; or validate the irregularity, conformably to the requirements of section 105 of the Civil Practice Act [now CPLR 2001] which impose just such a duty in the absence of a showing of prejudice of a substantial right. We think the requirements of section 105 and the very fabric of judicial and procedural policy suggest that this sort of omission be supplied.”
Respondents’ final challenge is to petitioner’s standing or right to maintain this proceeding. Since the challenge takes the form of an objection in point of law to the petition (CPLR 7804, subd. [f ]), it is treated as similar to a CPLR 3211 motion to dismiss in an action. (See Legislative Studies and Reports on CPLR 404, McKinney’s Cons. Laws of N. Y., Book 7B, CPLR, p. 667.) Thus the material allegations of the petition are admitted for purposes of this motion except to the extent they are controverted by affidavits (cf. CPLR 3211, subd. [c]). The only affidavit submitted by respondents avers that petitioner is neither a taxpayer nor a registered voter in the Village of Cornwall. This is not in dispute. But by failing to put in issue any of the allegations of the petition for the purposes of this motion, respondents have admitted that petitioner owns and publishes a *45 newspaper of general circulation in Orange County; that respondents have denied petitioner access to the village records; and that such records contain matters of public concern and interest.
It is the position of respondents that only taxpayers of the Village of Cornwall may inspect the records of the village, a position this court rejects.
Petitioner claims its right to inspect is mandated by section 82 of the Village Law which provides in pertinent part: 6 ‘ He [the village clerk] shall, during office hours as prescribed by the board of trustees, on demand of any person, produce for inspection the books, records and papers of his office, and shall furnish a copy of any portion thereof, certified in the proper form to be read in evidence, upon the payment of his fees therefor, at the rate of twenty cents per folio.” (Emphasis supplied.)
What does ” any person ” mean 1 By common understanding and usage, the meaning is clear. There is no limitation to taxpayers, and by section 37 of the General Construction Law, person includes a corporation. Plain legislative language should not be tortured to fit an arbitrary definition.
Going beyond the clear meaning and unambiguous language of the statute, we find ample support for this construction. “ In construing statutory provisions, the spirit and purpose of the statute and the objectives sought to be accomplished by the legislature must be borne in mind.” (Matter of New York Post Corp. v. Leibowitz, 2 N Y 2d 677, 685.)
Section 82 of the Village Law does not contain the limitation found in section 51 of the General Municipal Law, relied upon by respondents. Section 51 of the General Municipal Law limits inspection of municipal records to taxpayers of the municipality. This section, however, creates a particular cause of action, a taxpayer’s suit, and for purposes of such an action, not in any way similar to the proceeding before the court, the right of inspection is limited to taxpayers who may bring such an action.
Respondents further rely on an informal opinion by the Attorney-General rendered in 1963 (1963 Opns. A tty. Gen. 115) wherein the opinion was expressed that a newspaper which is neither a taxpayer nor a resident of a village does not have the statutory right to inspect written contracts entered into by the village. The opinion made no reference to section 82 of the Village Law, but relied on former section 68 of the Village Law and section 51 of the General Municipal Law. Section 68 of the Village Law, repealed since the issuance of this opinion, provided that “ all books, papers and records relating to village affairs kept by any board or officer shall be open to inspection *46 at all reasonable hours by every inhabitant of the village.” No comparable provision of any statute remained effective after the repeal of this section in 1964. We have indicated our opinion that section 51 of the General Municipal Law is not applicable to the situation at bar. The informal opinion of the Attorney-General thus has no bearing on this proceeding.
Section 66 of the Public Officers Law requires the custodian of records of a public office “ upon request, and upon payment of, or an offer to pay, the fees allowed by law * * * [to] diligently search the files, papers, records, and dockets in his office; and either make one or more transcripts therefrom”. There is no limitation as to who may seek and procure these records and the Court of Appeals in Matter of New York Post Corp. v. Leibowitz (supra, p. 686) through Ftjld, J., made clear the purpose of this section and its broad application: “ there is no doubt that it expresses a strong legislative policy to make available to public inspection and access all records or other papers kept ‘ in public office ’, at least where secrecy is not enjoined by statute or rule. Effectuation of the policy in favor of full publicity accordingly demands the broadest possible interpretation of the scope and content of that section, so far as some overriding consideration of policy does not forbid.”
In the absence of any statutory limitation on the right to inspect the books, records and papers of the Village Clerk, the language of Chief Judge Desmond in a dissent in Matter of New York Post Corp. v. Moses (10 N Y 2d 199, 207; the majority opinion did not conflict with this statement) is appropriate: “ It is in the public interest that such ‘ right to know ’ statutes be made usable wherever possible —that is, wherever there is no positive statutory law to the contrary.”
Respondents’ main attack is on petitioner’s “ standing ” to bring this proceeding. Narrowly construed, our determination would be limited to whether petitioner has the right to institute this proceeding and seek the relief sought in the petition. Clearly petitioner has such a right (Matter of Andresen v. Rice, 277 N. Y. 271, 281; Matter of New York Post Corp. v. Leibowitz, 286 App. Div. 760, 764 revd. on other grounds 2 N Y 2d 677, supra; Matter of Jordan v. Loos, 204 Misc. 814, 816 affd. on opn. below 283 App. Div. 983). If we treat respondents’ challenge to petitioner’s “ standing ” in the broadest sense, the issue presented is whether as a matter of law petitioner may not enforce the inspection rights conferred by section 82 of the Village Law. This statute does not limit inspection to a taxpayer or resident of the village. Since it is admitted for purposes of this motion that petitioner is engaged in the gathering and dissemination of *47 news in the Village of Cornwall and that the information it seeks to discover is of public concern and interest, we hold petitioner’s “ standing ” to be sufficiently established to withstand respóndanos ’ motion to dismiss. News media can and do competently and effectively accomplish the purposes underlying such “ right to know ” statutes.
The motion to dismiss is denied in all respects and respondents shall serve their answer and return within 5 days of service of the order to be entered hereon upon respondents ’ attorney.